**ATCHISON CASTING CORPORATION,**
Plaintiff,

v.

**MARSH, INC., Defendant.**

**No. CIV.A. 01–30033–FHF.**

United States District Court,
D. Massachusetts.

July 7, 2003.

Tracy Thomas Boland, Morgan, Brown & Joy, Jeanne E. Demers, Kirkpatrick & Lockhart, John M. Edwards, Kirkpatrick & Lockhart, Boston, MA, for Plaintiff.

Alexandra B. Harvey, Anderson, Adler, Cohen & Harvey, Boston, MA, Eric J. Van Vugt, Quarles & Brady LLP, Milwaukee, WI, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO QUASH SUBPOENA AND/OR FOR PROTECTIVE ORDER (Document No. 39)*

NEIMAN, United States Magistrate Judge.

The present action arises out of an alleged agreement by Marsh, Inc. ("Defendant"), an insurance broker, to assist in meeting the insurance needs of Atchison Casting Corporation ("Plaintiff"), owner of the Jahn Foundry in Springfield, Massachusetts. Pursuant to Fed.R.Civ.P. 26(c) and 45(c)(3)(B), Plaintiff has moved to quash a subpoena duces tecum served by Defendant on a non-party, Kemper Insurance Companies ("Kemper"). The subpoena requests production of a settlement agreement entered into between Plaintiff and Kemper on March 17, 2003. Kemper itself has not sought to quash the subpoena. For the reasons which follow, Plaintiff's motion, referred to this court pursuant to 28 U.S.C. § 636(b)(1)(A), will be denied.

The facts are not in dispute. On February 24, 1999, an explosion caused extensive damage to Plaintiff's foundry. After seeking recovery on its insurance policy with Kemper, Plaintiff claims to have discovered that its coverage was inadequate. As a result, Plaintiff commenced the present action to recover approximately $12 million from Defendant. The $12 million is purported to represent the difference between the damages Plaintiff incurred as a result of the explosion and the amount it recovered from Kemper. The amount recovered from Kemper was the result of an arbitration between Kemper and Plaintiff which, in turn, led to the settlement document currently at issue.

Although Defendant makes certain procedural arguments with respect to the instant motion to quash—e.g., that Plaintiff waived any objection to the subpoena—the court believes that the motion turns on the relevancy of the settlement agreement. For its part, Plaintiff asserts that the settlement agreement is irrelevant. Defendant, as might be expected, disagrees.

In pursuit of its motion, Plaintiff implicitly acknowledges that courts can allow the discovery of information contained in and related to confidential settlement agreements. Plaintiff's argument, rather, is that Defendant has not met a "heightened standard" for such discovery which, ostensibly, "the majority of courts considering the issue have required the requesting party to meet . . . in deference to Federal Rule of Evidence 408, and the public policy to encourage settlements and to uphold confidentiality provisions." *Young v. State Farm Mut. Auto.*

*Ins. Co.*, 169 F.R.D. 72, 76 (S.D.W.Va.1996). More specifically, Plaintiff argues that Defendant has not made a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of [the] settlement agreement." *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y.1982). *See also Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 562 (D.N.J.1994) (applying heightened standard and refusing disclosure); *Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D.Pa.1993) (applying heightened standard and switching the burden of proof from the party opposing the discovery to the party seeking it). *But see Bennett v. La Pere*, 112 F.R.D. 136, 140 (D.R.I.1986) (rejecting heightened standard and placing burden on party opposing discovery to establish good cause for withholding material).

Interestingly enough, neither party has asked the court to review the settlement agreement *in camera*. In the end, however, the court finds such review unnecessary, for even were the court to apply a heightened standard and place the burden on Defendant, the relevancy of the settlement agreement for discovery purposes is self-evident.

Plaintiff's own description of its lawsuit demonstrates that the settlement agreement is relevant: "Because Kemper refused to cover the entire property and business interruption losses, [Plaintiff] seeks the difference in coverage from [Defendant] by this action, which alleges, among other things, professional malpractice and breach of contract." (Plaintiff's Motion at ¶ 5.) In essence, Plaintiff seeks what Kemper has refused to pay and, thereby, effectively concedes the relevancy of the settlement agreement to the instant matter. Indeed, Plaintiff admits that it has already shared with Defendant those parts of the agreement it deems relevant to their dispute. (See *id.* ¶ 1.) Plaintiff has told Defendant not only the amount of the settlement but that it resolved business interruption claims only.[1]

To be sure, Plaintiff claims that "[t]he rest of the terms of the Settlement Agreement are irrelevant to [Plaintiff]'s claims against [Defendant]" and that accordingly, it has the "right to keep these terms confidential." (*Id.* ¶ 7.) In the court's opinion, Plaintiff is simply wrong. First, it practically goes without saying that Plaintiff ought not be empowered to decide what may or may not be relevant for Defendant's purposes, particularly when, as here, the settlement agreement, for the reasons described, is directly relevant to the subject matter of the pending action. Second, there is little doubt in the court's mind that, once produced, the settlement agreement could reasonably be expected to lead to the discovery of other admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). The broad scope of the discovery rules reflects a policy that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 414 (D.Mass.1995) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any probability it might be relevant to the subject matter of the action."). *See also Cabana v. Forcier*, 200 F.R.D. 9, 17 (D.Mass.2001) (similar).

Third, as Defendant points out, Plaintiff has offered scant support in the case law for maintaining the secrecy of a settlement agreement that goes to the heart of an action, let alone an action initiated by the party which seeks protection from discovery. In particular, Plaintiff's reliance on *Flynn v. Portland Gen. Elec. Corp.*, 1989 WL 112802 (D.Or. Sep.21, 1989), is misplaced. There, the court, in issuing a protective order, held that the settlement agreement from a prior lawsuit was not discoverable because the facts were sufficiently distinguishable from the lawsuit at hand. *Id.* at *2. Here, in contrast, Plaintiff's settlement with Kemper concerns the very facts underlying the parties' dispute. Moreover, the settlement

---

**1.** Property losses, evidently, were settled by Plaintiff and Kemper in another, prior settlement agreement. A copy of that settlement agreement has been provided to Defendant. The two settlements, reportedly, amounted to over $30 million.

agreement bears directly on the damages Plaintiff seeks.

At bottom, the policies favoring liberal discovery outweigh Plaintiff's claim of confidentiality. Plaintiff's motion, therefore, is DENIED.

IT IS SO ORDERED.